UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JAMES "BRYAN" LAKE and TERRY HALL,<br><br>    Plaintiffs,<br><br>   vs.<br><br>FIRST NATIONAL INSURANCE COMPANY OF AMERICA et al.,<br><br>    Defendants. | Case No: C 09-00797 SBA<br><br>**ORDER**<br><br>[Docket Nos. 22, 27] |

The parties are presently before the Court on Defendant First National Insurance Company of America's Motion for Summary Judgment.[1] (Docket 22.) Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

**I.    FACTUAL BACKGROUND**

  **A.    P**LAINTIFFS' **I**NSURANCE **P**OLICY AND **L**OSS **C**LAIM

In 2006, Plaintiffs purchased a residential property in Hayward, California ("the Residence").[2] (Docket No. 27, RJN, Ex. 1, ¶ 1.) Defendant issued a homeowner's policy for the Residence, which went into effect on December 7, 2006 (the "Policy"). (Docket No. 35-1, Lake Decl., ¶ 3.) The Policy also contains the following provisions:

---

[1] The Court also has considered Defendant's Request for Judicial Notice, Docket No. 27, and that request is GRANTED. Defendant's Objections to Plaintiffs' Evidence (Docket No. 37) and Plaintiffs' Objections to Evidence Submitted by Defendant on Reply (Docket No. 40-1) are rendered MOOT, as this evidence was not considered in ruling on Defendant's motion.

[2] Plaintiffs do not allege in their complaint the exact date of purchase of the Residence, though they state in their opposition papers that the closing date for the home was December 7, 2006. Defendant asserts in its moving papers that the date of purchase was December 15, 2006, but the evidence it cites in support of that assertion (Plaintiffs' complaint) does not include any such specificity.

SECTION 1 - PROPERTY CONDITIONS

\* \* \*

5. Loss Settlement:  Covered property losses are settled as follows:

\* \* \*

    b.    Full Value.  Personal property under Coverage C or Option E -- Scheduled Personal Property, not otherwise described under Loss Settlement, 5.c., Actual Cash Value, below, …

\* \* \*

    (2)    We will pay the difference between actual cash value and replacement cost only after the damage, destroyed, or stolen property has actually been repaired or replaced.

    (3)    You may make a claim for loss on an actual cash value basis and then make a claim, within 180 days after loss, for an additional liability under replacement costs, after you have repaired or replaced the property.

\* \* \*

    c.    Actual Cash Value.

\* \* \*

    (2)  The following property

        (a)    antiques, fine arts, paintings, and similar articles of rarity or antiquity which cannot be replaced;

        (b)    memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value ….

\* \* \*

8. Suit Against Us.  No action shall be brought against us unless there has been compliance with the policy provisions and the action is started within one year after the inception of the loss or damage.  (Id., Ex. 1 at FN00029-31, FN00046.)

    Plaintiffs allege that the Residence was burglarized on December 17, 2006 and that several items were stolen.  (RJN, Ex. 1, ¶ 2.)  The parties dispute when Plaintiff Terry Hall ("Hall") first notified Defendant of the loss.  Plaintiffs assert that she notified Defendant on

1  December 21, 2006, and Defendant asserts it did not receive notice until December 29, 2006.
2  However, it does not appear that the parties dispute that Plaintiffs' notice of loss was timely.

3      **B.**    **CORRESPONDENCE BETWEEN THE PARTIES REGARDING PLAINTIFFS' LOSS**
4          **CLAIM**

5      On January 3, 2007, Defendant sent a letter to Hall acknowledging receipt of the claim
6  and informing her that "[w]e have begun investigation of this claim …." (Docket No. 25, Pyle
7  Decl., ¶ 2, Ex. 1.) Defendant wrote to Hall again on February 22, 2007, advising her that the
8  claim was still under investigation and notifying her of certain provisions in the Policy,
9  including the one year limitation period contained in the "Suit Against Us" provision. (Docket
10 No. 24, Cianfaglione Decl., ¶ 2, Ex. 1.)

11     The primary dispute between the parties involved the valuation of certain stolen items,
12 including a Civil War jacket that Plaintiffs assert is authentic. On June 11, 2007, Defendant
13 wrote to Hall advising her that it was still investigating the claim under a reservation of rights
14 and was hiring an independent appraiser to value some of the disputed items. (Docket No. 26,
15 Wyatt Decl., ¶ 3, Ex. 2.) Defendant also notified Hall again about the Policy's one year
16 limitation period for bringing suit, and explained that she could recover replacement cost under
17 the Policy by submitted receipts for replaced items within 365 days of Defendant's first
18 payment toward actual cash value. (Id.)

19     On June 19, 2007, Defendant wrote to Hall informing her that it could not confirm the
20 authenticity of the Civil War jacket and it would reimburse Hall $407.81 for the jacket. (Id.,
21 Ex. 4.) Defendant further advised Hall that the actual cash value of the claim was $24,286.64
22 and that Plaintiffs had up to $6,687.83 in recoverable depreciation due once they replaced any
23 of the items where depreciation was deducted. Defendant further stated that the "claim will be
24 kept open for an additional 90 days in order for [Hall] to replace those items." (Id.)

25     On July 5, 2007, Defendant responded to a July 3, 2007 e-mail from Hall, wherein Hall
26 asked how Defendant intended to "close this claim." (Id., Ex. 5 at FN00230-00231.)
27 Defendant advised Hall that the file would "remain open until 03/21/2008 which is one year
28 from the date of the first Actual Cash Value payment." (Id. at FN00230.) Defendant asserts

1  that as of the July 5, 2007 e-mail, it had paid what it determined to be the actual cash value of
2  Plaintiffs' claim.  (Id., ¶ 6.)
3       On July 12, 2007, Hall sent Defendant a replacement receipt for an electric drill listed
4  on her schedule of loss.  (Id., Ex. 6.)  On July 13, 2007, Defendant advised Hall that a $199.07
5  check for the replacement of the drill would arrive under separate cover.  (Id., Ex. 7.)
6       On August 14, 2007, Defendant sent a letter to Hall stating "[w]e are holding your claim
7  open for the replacement of your personal property in order to refund your withheld
8  depreciation.  Please forward your replacement receipts as soon as possible … you must
9  replace the damaged item and submit the original purchase receipt within 365 days from the
10 date of the first payment towards ACV."  (Id., Ex. 8.)  In addition, that letter advises Hall again
11 of the one year limitation period in the Policy, asks Hall to "advise us if you intend on
12 replacing your personal property," and concludes with two possible signature lines for Hall to
13 sign and date:  one with the text "I will not be replacing my personal properly for the above
14 claim, please close my file" and the other with the text "I will be replacing my personal
15 property please enclosed are replacement receipts.  Do not close this file."  (Id.)
16      Also on August 14, 2007, Hall confirmed to Defendant that she received a refund
17 depreciation check on July 14, 2007, and, with respect to replacement receipts, stated "[w]e
18 haven't had a chance to go and replace the items but we know we need to do it soon."  (Id., Ex.
19 9 at FN00203-00204.)
20      On August 22, 2007, Defendant sent a letter to Mariano Ampil of the California
21 Department of Insurance, advising him of the status of payment under Plaintiffs' claim, stating
22 that "[o]ur file remains open pending the insured submitting replacement cost receipts."
23 (Docket No. 35-2, Campbell Decl., Ex. 15.)
24      On September 28, 2007, Defendant sent a letter to Hall similar to its August 17, 2007
25 letter, stating "[w]e are holding your claim open for replacement of personal property in order
26 to refund your withheld depreciation."  (Id., Ex. 16.)
27      Hall submitted additional receipts for replaced items on October 16, 2007.  (Id., Ex. 18.)
28 On October 17, 2007, Defendant sent another letter to Mr. Ampil regarding Plaintiffs' claim,

stating "[t]his claim has been resolved.  We have paid the actual case value of all items except one … The only other item open on this claim is the replacement cost portion of the file.  Our insured has until 4-17-08 to replace items and send us the receipts and we will pay the replacement cost portion of the claim."  (Id., Ex. 19.)  On October 24, 2007, Defendant advised Hall that it was sending her a check for $641.08 for replacement items.  (Id., Ex. 20.)

The final correspondence in the record occurred on March 18, 2008, when Defendant sent a letter to Hall, explaining "[w]e still show a balance of $5,847.45 in recoverable depreciation but that day will expire on March 21, 2008.  If you have any replacement receipts you have not submitted please have them emailed or faxed over as soon as possible." (Id., Ex. 24.)

### C.   PROCEDURAL BACKGROUND

On September 23, 2008, Plaintiffs filed this action in the Superior Court of California, County of Alameda.  (RJN, Ex. 2.)  On January 16, 2009, Plaintiffs filed their first amended complaint.  (Id., Ex. 1.)  Plaintiffs allege causes of action for breach of contract and breach of the covenant of good faith and fair dealing for failing to fully compensate them for property stolen from the Residence.  On February 24, 2009, this action was removed to this Court on diversity grounds.  (Docket No. 1, Notice of Removal.)

Defendant now moves for summary judgment, asserting that Plaintiffs' suit is time barred under a provision in their policy that states that an action under the policy must be brought within one year after the inception of the loss.

## II.   LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this initial burden, the burden then shifts

- 5 -

to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" Ricci v. DeStefano, -- U.S. --, 129 S.Ct. 2658, 2677 (2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). An issue of fact is "material" if, under the substantive law of the case, resolution of the factual dispute might affect the outcome of the claim. See Anderson, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." Id. at 250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted).

## III. DISCUSSION

### A. THE POLICY'S ONE YEAR LIMITATION WAS EQUITABLY TOLLED UNTIL DEFENDANT "UNEQUIVOCALLY DENIED" BENEFITS IN WRITING

The parties do not dispute that the Policy contains a limitation requiring a suit to be brought within one year from the inception of loss. This one year limitation provision is a mandatory term required by California Insurance Code §§ 2070 and 2071. Such provisions have been held to be valid and enforceable by the courts. See Prudential-LMI Com. Insurance v. Superior Court, 51 Cal.3d 674, 683 (1990). The one year provision bars both contract and tort actions (including bad faith actions) not filed within the period, as long as the claim for relief is "on the policy," meaning that it seeks "to recover policy benefits or [is] grounded upon a failure to pay policy benefits." Sullivan v. Allstate Ins. Co., 964 F.Supp. 1407, 1414-1415 (1997); see also Velasquez v. Truck Ins. Exch., 1 Cal.App.4th 712, 719-721 (1991). Here, Plaintiffs' breach of contract and bad faith claims are based on the allegation that Defendant

withheld benefits under the Policy. (RJN, Ex. 1, ¶¶ 20, 28, 32, 36, 37, 38.) Thus, the one year limitation applies.

However, the one year period is "equitably tolled from the time the insured files a timely notice, pursuant to the policy notice provisions, to the time the insurer formally denies the claim in writing."[3] Prudential-LMI Com. Insurance, 51 Cal.3d at 678. This has been construed to mean an "*unequivocal denial in writing*." See Aliberti v. Allstate Ins. Co., 74 Cal.App.4th 138, 149 (1999) (emphasis added). An "unequivocal denial" can also mean a letter stating that no further benefits will be provided beyond those previously paid. Migliore v. Mid-Century Ins. Co., 97 Cal.App.4th 592, 605 (2002).

### B. PLAINTIFFS HAVE SHOWN THAT THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO WHEN DEFENDANT "UNEQUIVOCALLY DENIED" BENEFITS IN WRITING

By its motion, Defendant argues that there is no genuine issue of fact that tolling of the one year period ended on July 5, 2007, by which date it had advised Plaintiffs that it had completed its investigation and determined that the total value of their claim was $28,651.74, it had paid the actual cash value of the claim ($24,286.64), and it had advised Plaintiffs that they had up to $6,687.83 in recoverable depreciation due once they replaced stolen items. Thus, Defendant argues that by July 5, 2007, it had unequivocally informed Plaintiffs in writing of the benefits it would be paying under the claim, thus ending the tolling period and requiring that Plaintiffs file suit on or before July 5, 2008.

As such, the question is have Plaintiffs shown that a genuine fact issue exists as to whether the equitable tolling period could be extended through at least September 23, 2007, which is one year before filing of the current suit. In addressing that question, it is important to consider the two types of coverage provided under the Policy because recovery under each occurs at a different point in time.

---

[3] The parties do not appear to dispute that Plaintiffs timely filed their notice of loss.

- 7 -

1   The first type of coverage under the Policy is for "actual cash value." An insurer
2  determines "actual cash value" based on the fair market value of the property at the time of loss
3  or destruction. <u>Fire Ins. Exchange v. Superior Court</u>, 116 Cal.App.4th 446, 462 (2004).

4   The second type of coverage under the Policy is for "replacement loss," which entitled
5  Plaintiffs to receive recoverable depreciation for the stolen items only after the items had
6  actually been replaced. Recoverable deprecation is "the difference between the actual cash
7  value and the full replacement cost reasonably paid to replace the damaged property …." Cal.
8  Ins. Code § 2051.5(a). An insured typically recovers under a replacement cost provision *after*
9  the insurer pays actual cash value (as occurred here). Indeed, under California Insurance Code
10 § 2051.5(b)(1), an insurer cannot impose a time limit of less than 12 months from the date of
11 first payment toward actual cash value upon the insured in order to collect the full replacement
12 cost (thus rendering ineffective the 180 day limit for submitting replacement receipts stated in
13 the Policy (<u>see</u> Wyatt Decl., Ex. 1 at FN00030)). Here, the record shows that Defendant had
14 communicated to Plaintiffs on several occasions that they had one year from the date of the
15 actual cash value payment to submit receipts for replaced items. (<u>Id</u>., Exs. 2, 5, 8; Campbell
16 Decl., Ex. 16.)

17   As to when Defendant completed payment of the *actual cash value* of the claim, the
18 evidence submitted convincingly shows that this occurred no later than July 5, 2007. With
19 respect to *replacement loss coverage*, the evidence shows that Defendant repeatedly
20 represented that it was keeping its file open until March 21, 2008 to allow Plaintiffs to recover
21 their depreciation by submitting receipts for replaced items. Therefore, the issue here is further
22 narrowed to whether a reasonable jury could find that Defendant's representations that it was
23 "keeping its file open" until March 21, 2008 means that Defendant did not "unequivocally deny
24 in writing" further payment on Plaintiffs' claim until March 21, 2008 (or at least until it paid
25 Plaintiffs' final replacement cost claim on October 27, 2007).

26   Neither party has cited any case addressing this specific factual issue. Defendant relies
27 on <u>Marselis v. Allstate Ins. Co</u>., 121 Cal.App.4th 122 (2004), but the facts of that case are
28 distinguishable. <u>Marselis</u> did not involve recovery under a replacement cost provision. Rather,

1  in Marselis, the insured simply sought to reopen, on November 24, 1992, a claim of damage
2  after the Loma Prieta earthquake that was *fully paid* by Allstate on February 25, 1990.  Id. at
3  25.  The insured sought to reopen her claim after hearing about generous insurance settlements
4  following the Oakland Hills fire in October 1991.  Id.  The trial court determined that the one
5  year limitation period had expired no later than February 25, 1991, one year after the payments
6  were made to the insured.  Id.  On appeal, the insured argued that since coverage was not
7  denied on her original claim, and she did not receive an unequivocal written statement from
8  Allstate informing her that the claim was closed, the limitation was tolled even after she
9  received payment on the claim.  Id.  In rejecting those arguments, the Court of Appeals stated
10 that "[n]othing justifies judicial extension of the equitable tolling rule to create a right to reopen
11 claims that have been paid."  Id. at 126.
12       In this case, payment for replacement costs was ongoing.  While Defendant had
13 determined the total value of the claim by July 5, 2007, payments toward that total value
14 continued until the last replacement cost payment on October 24, 2007.  Defendant repeatedly
15 informed Plaintiffs that it was keeping its file open in order to process receipts for replacement
16 costs.  Plaintiffs were taking advantage of the replacement cost provision by submitting
17 receipts.  Moreover, processing of those receipts was not merely a clerical task, as Defendant
18 could have rejected a receipt as unreasonable and denied recovery.  See Cal. Ins. Code §
19 2051.5(a) (recoverable depreciation considers "the full replacement cost *reasonably paid* to
20 replace the damaged property …." ) (emphasis added).  Indeed, in the case of such a denial,
21 Plaintiffs would have less than one year to dispute any denials that occurred after July 5, 2007
22 if we accept Defendant's argument that July 5, 2008 was the cutoff to file suit.  That result is
23 contrary to California Insurance Code §§ 2070 and 2071, which provide that an insured has a
24 full year to bring a claim under a policy.
25       Therefore, this Court finds that the evidence submitted is sufficient to create a genuine
26 issue of material fact as to when Defendant unequivocally denied coverage or settled the claim
27 in writing, thus ending the equitable tolling period.
28

IV. CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Defendant First National Insurance Company of America's Motion for Summary Judgment is DENIED. This order terminates Docket 22.

IT IS SO ORDERED.

Dated: June 21, 2010

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge